UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 08-CR-116 KJM |
| Plaintiff, | |
| v. | ORDER |
| CHARLES HEAD, et al., | |
| Defendants. | |

On October 16, 2013, the court heard argument on defendant Benjamin Budoff's motion in limine #2. (ECF 345 at 5.) Defendant seeks admission of (1) all letters between attorney S.M. and codefendant Charles Head ("Head"); and (2) "a pretrial ruling that S.M. will be ordered to testify in this matter if called to do so on those subjects further defined by the court." (*Id.*) Defendant's theory of admissibility as to the letters is that they are not protected by the attorney client privilege because they are communications in furtherance of a future crime. (*Id.* at 6.) Further, defendant asserts they are admissible even if they are hearsay as statements of a coconspirator under Federal Rule of Evidence 801(d)(2)(E). (*Id.*) In his written notes of his arguments made at hearing, Mr. Samuel also includes a line saying the documents are not offered for the truth of the matter, but to show Head's motive or state of mind and to explain Head's actions. ECF 397 at 3:8-11. As explained below, defendant's motion is GRANTED in part and DENIED in part.

1

A.  BACKGROUND

Prior to hearing on the motion, the court conditionally sealed defendant's Exhibit A containing the documents defendant seeks to have admitted. (ECF 378 (following guidance provided in *United States v. Zolin*, 491 U.S. 554, 570 (1989).) In so ruling, the court assumed without deciding that the documents in Exhibit A are privileged. (*Id.* at 3.)

In response to the motion, codefendant Head has filed a privilege log identifying and describing the documents contained in Exhibit A. (ECF 375-1.) Head identifies four communications from attorney S.M. to Head in Exhibit A and claims that each is privileged. The first, dated June 13, 2006, is an opinion letter regarding the Illinois Mortgage Fraud Rescue Act, including an analysis of that Act's criminal and civil penalties and remedies. (*Id.* (citing Ex. A at Box037-000611–000616[1]).) The second, dated June 26, 2006, is an opinion letter analyzing Marie Citarella's claim against Head Financial Services under New Jersey law. (*Id.* (citing Ex. A at Box002-000270–000280).) The third, dated July 5, 2006, is an opinion letter recommending separating three entities, Head Financial Services, Inc., Creative Loans, LLC, and Nations Property Management, LLC, in order to "assist with limiting the effects of past mistakes and with limiting the possibility of future liability." (Ex. A at Box002-000011.) This letter was based upon documents and conversations S.M. had with the principals and employees of those companies. (*Id.* at 000014.) The fourth, an e-mail dated August 9, 2006, conveys a proposed settlement offered by an opposing party in a lawsuit. (Ex. A at Box033-000003–000004.) In addition to Head, the first two letters were also addressed to Keith Brotemarkle and Jack Corcoran, two other employees of Head Financial. (Ex. A at Box037-000610, Box002-000270.) The third letter was addressed to Head and Corcoran at Head Financial Services in Long Beach California. (Ex. A at Box002-000011.) The fourth communication, the August 2006 e-mail, was sent to Head only, regarding a settlement with Creative Loans "or someone else [Head designates]." (Ex. A at Box033-000003–000004.)

/////

---

[1] These page ranges correspond to the Bates stamps on the lower right hand corner of the documents.

2

B.  ATTORNEY CLIENT PRIVILEGE

The court finds that Head has not demonstrated that he is the holder of any privilege with respect to the letters and e-mail, either on behalf of Head Financial, any other company, or himself.  "The burden of proving that the privilege applies is placed upon the party asserting the privilege." *United States v. Landof*, 591 F.2d 36, 38 (9th Cir. 1978).  There is no presumption under federal common law that the privilege attaches. *United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009).  The privilege can apply to communications between officers of corporations and outside counsel for the corporation. *See id.* (officer's disclosure to outside counsel was not privileged because it was not made in confidence); *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) (finding the privilege may also extend to employees, not just officers). Officers or managers of the corporation may invoke the privilege on behalf of the corporation "in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348–49 (1985).  However, former officers under investigation for fraud may not exercise the privilege on behalf of the corporation. *Id.* at 353.

Moreover, an officer such as Head may not invoke the privilege on his own behalf unless he shows there is a joint privilege. *See United States v. Graf*, 610 F.3d 1148, 1164 (9th Cir. 2010) (functional employee holds no personal privilege over communications with counsel where five-factor test not satisfied).  To establish that corporate officers hold a joint privilege over communications with corporate counsel, the officers must demonstrate:

> *First,* they must show they approached counsel for the purpose of seeking legal advice. *Second,* they must demonstrate that when they approached counsel they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. *Third,* they must demonstrate that the counsel saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. *Fourth,* they must prove that their conversations with counsel were confidential. And *fifth,* they must show that the substance of their conversations with counsel did not concern matters within the company or the general affairs of the company.

*Graf*, 610 F.3d at 1160 (quoting *Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 123, 125 (3d Cir. 1986)) (original emphasis).

3

Here, the record before the court demonstrates that S.M.'s client was Head Financial.  S.M.'s client was not Head or any other individual involved in this case. The letters at issue here, except for the e-mail, were addressed to Head and to other employees of Head Financial, and the third letter was explicitly addressed to Head Financial.  While the third letter supports an inference that Head and perhaps Corcoran controlled Creative Loans and Nations Property in addition to Head Financial (Ex. A at Box002-000011), Head has not provided sufficient information for the court to surmise whether these entities may also enjoy a privilege with S.M.  Furthermore, S.M.'s billing statements were addressed to Head Financial and directed to the attention of codefendant Jack Corcoran (*see, e.g.*, Ex. A at Box004-000032).  *See Graf*, 610 F.3d at 1161 (finding a firm represented the corporation not the corporation's officer in part because the corporation paid the firm's bills).

Head cannot invoke any privilege that may exist on behalf of Head Financial. Head Financial currently is not an active corporation; the California Secretary of State Business Search website lists it as "suspended."[2]  Head has been convicted of both conspiracy to commit mail fraud and mail fraud in another case related to his work at Head Financial and is indicted in the instant case on similar charges.  Given these circumstances, Head may not invoke the privilege on behalf of Head Financial.  *Cf. Weintraub*, 471 U.S. at 353–54 (former officers of dissolved corporation who are under investigation for fraud may not exercise the privilege on behalf of the corporation); *PCS Nitrogen, Inc. v. Ross Dev. Corp.*, No. CIV.A. 2:09-3171-MBS, 2011 WL 3665335, at *4 (D.S.C. Aug. 19, 2011) (former officer of dissolved corporation may not invoke the privilege when circumstances suggest it would be used to protect his own interests); *In re Sacramento Mini Storage*, 112 F.3d 517 (9th Cir. 1997) ("a suspended corporation cannot function as a corporation and [is] incapable of exercising corporate powers for any business

---

[2] The court may take judicial notice of information posted on government websites as it can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2); *see Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997, 1003–04 (N.D. Cal. Nov. 5, 2012) (citing *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities . . . .")).

1  purpose," which "includes the ability to prosecute and defend lawsuits . . . ." (internal quotations
2  and citations omitted) (original alteration)).

3  Neither can Head demonstrate he holds a joint privilege.  Head has not met the
4  second and fifth elements of the *Graf* test.  Nothing in the communications themselves or
5  elsewhere in the record suggests Head informed S.M. that Head was seeking legal advice in
6  Head's individual capacity.  *See Graf*, 610 F.3d at 1160.  The letters demonstrate S.M. was
7  responding to inquiries from various parties at Head Financial, including codefendant Keith
8  Brotemarkle.  (*See, e.g.*, Ex. A at Box037-000610.)  Only the e-mail was addressed to Head
9  alone.  Moreover, as already noted, S.M.'s invoices were directed to Head Financial, not to Head,
10  and there is no indication Head paid them personally.  As to the fifth element, the letters
11  themselves demonstrate the substance of their communications were matters within the general
12  affairs of the company: how to handle new laws affecting Head Financial's business; how to
13  respond to a civil suit against Head Financial; and instructions on limiting the liabilities of Head
14  Financial and its related companies Creative Loans and Nations Property, based on conversations
15  with a number of principals and employees from these companies.  The e-mail addresses a
16  settlement with Creative Loans.  *See Graf*, 610 F.3d at 1160.

17  In light of this analysis, the court need not reach the question whether the crime-
18  fraud exception applies.

19  C.  HEARSAY

20  Head's assertion that the documents contained in Exhibit A, including the
21  communications analyzed above, are inadmissible hearsay also is unavailing.  An out of court
22  statement is hearsay if it is introduced for the truth of the matter asserted.  *United States v. Payne*,
23  944 F.2d 1458, 1472 (9th Cir. 1991).  The probative value of the documents at issue is that they
24  assert that Head can limit his liability by creating more discrete entities for companies in which
25  he was an owner.  (*See, e.g.*, Ex. A at Box002-000011.)  Budoff does not seek to admit the
26  communications to prove that Head could in fact limit his liability by separating ownership of the
27  named companies.  Instead, he seeks to admit them as circumstantial evidence of Head's state of
28  mind, namely, that Head had an independent motive and plan to transfer ownership to Budoff.

5

*See Payne*, 944 F.2d at 1472 (statements introduced for their effect upon the listener are not hearsay). If Budoff does not seek to use the documents in Exhibit A for the truth of matters they assert, the documents are not barred by the hearsay rule.

D.  S.M. AS WITNESS

Defendant also requests "a pretrial ruling that S.M. will be ordered to testify in this matter if called to do so on those subjects further defined by the court." (ECF 345 at 5.) The court declines to grant this request as too vague and unsupported. *See Quinn v. Fresno Cnty. Sheriff*, No. 1:10-CV-01617 LJO, 2012 WL 2995477, at *2 (E.D. Cal. July 23, 2012) (denying motion in limine as too vague because movant did not identify particular evidence that would be affected by the ruling). Nor does defendant show on what basis this court can order S.M. to testify, other than the subpoena previously issued.

IT IS SO ORDERED.

DATE:  October 22, 2013.

_____
UNITED STATES DISTRICT JUDGE

6